## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IAN SMITH, )<br>)<br>　　　　　Plaintiff, )<br>)<br>v. )<br>)<br>MIDWEST RESPIRATORY CARE, INC. )<br>**Serve Registered Agent at:** )<br>CSC-Lawyers Incorporating )<br>Service Company )<br>221 Bolivar St., )<br>Jefferson City, MO 63105 )<br>)<br>　　　　　Defendant. ) | Case No.: 4:24-cv-00066-FJG<br><br><br><br>**JURY TRIAL DEMANDED** |

## FIRST AMENDED COMPLAINT FOR DAMAGES

COMES NOW Plaintiff Ian Smith, by and through the undersigned counsel, and states and alleges as follows for his First Amended Complaint for Damages against Defendant:

## NATURE OF THE CASE

Plaintiff's claims of discrimination arise under the Americans with Disabilities Act ("ADA/ ADAAA"), as amended, 42 U.S.C. § 12101 *et. seq*. and/ or the Missouri Human Rights Act, R.S.Mo. 213.010 *et seq*. ("MHRA").

## PARTIES

1. Plaintiff Ian Smith is and, at all relevant times herein, was a male resident and citizen of the State of Missouri.

2. Upon information and belief, Defendant Midwest Respiratory Care, Inc. ("Defendant") is a corporation organized under the laws of Nebraska, with its principal place of business in Nebraska, registered to do business in Missouri and conducting substantial business within Missouri.

1

3. At all times relevant to this matter, Defendant was a citizen of the State of Nebraska.

4. At all times relevant to this matter, Defendant was an "employer" as defined by § 213.010 of the Missouri Human Rights Act, R.S.Mo. § 213.010 ("MHRA"), in that Defendant is a person engaged in an industry affecting commerce that has six or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

5. At all times relevant to this matter, Defendant was an "employer" as defined by the ADA/ ADAAA, in that Defendant is a person engaged in an industry affecting commerce that has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

6. Defendant is an entity that acts though its agents and/or employees. It is liable for the conduct of its agents and/or employees acting within the course and scope of their agency and/or employment, its own negligence, the acts of its agents and/or employees which it knowingly ratifies, injuries incurred by agents' and/or employees' performance of its non-delegable duties, acts done by agents and/or employees for which the agency and/or employment relationship allows or assists the employee and/or agent to perform, and acts its agents and/or employees take by virtue of their position with Defendant.

7. At all times relevant herein, Defendant's employees, were acting within the course and scope of their employment and/or agency.

## JURISDICTION AND VENUE

8. This Court has original subject-matter jurisdiction over this matter pursuant to 28 U.S.C. §1331, because some of Plaintiff's claims arise under federal laws.

9. Alternatively, this Court has original subject-matter jurisdiction under 28 U.S.C. §1332 because of complete diversity between the parties and because the amount in controversy exceeds $75,000.

10. This Court has general personal jurisdiction over Defendant because Defendant conducts ongoing and substantial business in Missouri,

11. This Court has specific personal jurisdiction over Defendant because the unlawful practices of Defendant and its agents and employees alleged in this Complaint were committed in Blue Springs, Missouri.

12. Venue is proper in this Court because the unlawful practices alleged in this Complaint were committed in Blue Springs, Missouri.

## CONDITIONS PRECEDENT

13. On or about March 30, 2023, Plaintiff dually filed a timely Charge of Discrimination ("Charge") with the Missouri Commission on Human Rights ("MCHR") and the Equal Employment Opportunities Commission ("EEOC"). The Charge was assigned No. E-03/23-53135/ 28E-2023-00965. *A true and accurate copy of the Charge is attached hereto and incorporated herein by reference as **Exhibit A***.

14. On or about November 29, 2023, Plaintiff received from the MCHR the Right to Sue Notice with respect to the Charge. *A true and accurate copy of the Right to Sue Notice is attached hereto and incorporated herein by reference as **Exhibit B***.

15. On or about December 7, 2023, Plaintiff received from the EEOC the Right to Sue Notice with respect to the Charge. *A true and accurate copy of the Right to Sue Notice is attached hereto and incorporated herein by reference as **Exhibit C***.

16. This action is timely filed within ninety (90) days of the issuance of the Notices of

Right to Sue (attached as Exhibits B and C).

17. Plaintiff has exhausted all conditions precedent to filing this action.

## FACTUAL ALLEGATIONS

18. Plaintiff has been employed with Defendant since 2020 as a Service Technician/ Driver.

19. In the position of a Service Technician/ Driver, Plaintiff was required to drive, maintain a DOT card and operate equipment.

20. As part of the hiring process, Plaintiff had to pass a driver's test and receive a "good standing" DOT card.

21. On or about December 14, 2022, Plaintiff was diagnosed with Huntington's Disease.

22. Soon thereafter, Plaintiff informed his direct supervisor, Brent Markman, about his Huntington's Disease.

23. Huntington's Disease affects Plaintiff's balance and, as a result, his ability to walk. In addition, Huntington's Disease affects Plaintiff's ability to take care of himself.

24. Huntington's Disease did not affect Plaintiff's ability to perform the essential functions of his position of a Service Technician/ Driver, with or without reasonable accommodation.

25. Plaintiff's physician who diagnosed Plaintiff with Huntington's Disease did not express any concerns about Plaintiff's ability to drive or operate equipment.

26. Between 2020 and March 7, 2023, Plaintiff worked in his position of a Service Technician, without any restrictions or accommodations.

27. Throughout his tenure with Defendant, Plaintiff received positive evaluations that

4

did not contain any comments on his ability to drive.

28. On or about March 6, 2023, Mr. Markman told Plaintiff that Mr. Markman was going to inform Markman's supervisor, Billy Henley, about Plaintiff's Huntington Disease.

29. On or about March 7, 2023, Mr. Henley called Plaintiff into his office.

30. Mr. Henley advised Plaintiff that Defendant did not want Plaintiff to drive anymore because of his Huntington Disease.

31. As of March 7, 2023, Plaintiff's driver's license and DOT card were in good standing.

32. As of March 7, 2023, Plaintiff's physician did not place any restrictions on Plaintiff's driving or operating equipment.

33. When Mr. Henley told Plaintiff that Plaintiff could no longer drive for Defendant, Plaintiff requested an accommodation of working in the warehouse.

34. Mr. Henley denied Plaintiff's request for accommodation.

35. Defendant did not offer or provide any other accommodation for Plaintiff's Huntington's Disease.

36. Instead, Defendant terminated Plaintiff on or about March 7, 2023.

## COUNT I
## MHRA
**Discrimination on the basis of disability and/or perceived and/or record of disability in employment in violation of the MHRA, R.S.Mo. § 213.055**

37. Plaintiff incorporates by reference all the other allegations of this Complaint as if fully set forth herein.

38. The MHRA prohibits discrimination against a person on the basis of his or her disability.

39. Plaintiff's Huntington's Disease is a disability as defined by § 213.010 of the

MHRA, in that it is a physical or mental impairment which substantially limits one or more of Plaintiff's major life activities, and affects Plaintiff's brain cells, his balance, ability to walk and affects Plaintiff's ability to take care of himself.

40. Plaintiff's Huntington's Disease did not affect Plaintiff's ability to perform the essential functions of his job, with or without reasonable accommodations.

41. Alternatively, because of Huntington's Disease Plaintiff is being regarded as having such a physical impairment and/or Plaintiff has a record of having such an impairment, which with or without a reasonable accommodation does not interfere with Plaintiff performing the essential functions of his job.

42. The conduct and actions of the above described perpetrators as set forth herein, including but not limited to (i) informing Plaintiff that he could no longer perform the functions of a Service Technician/ Driver for Defendant, despite Plaintiff's DOT card and driver's license being in good standing and despite absence of any concerns or restrictions from his physician about his ability to drive or operate equipment; (ii) failing to provide a requested reasonable accommodation to Plaintiff of a warehouse job, (iii) failing to engaged in the interactive process of finding another reasonable accommodation; (iv) ultimately terminating Plaintiff, constituted discrimination against Plaintiff on the basis of his disability and/or record of disability and/or being regarded as having such a disability.

43. Defendant's actions adversely altered the terms, conditions, and privileges of Plaintiff's employment, including but not limited to: (i) informing Plaintiff that he could no longer perform the functions of a Service Technician/ Driver for Defendant, despite Plaintiff's DOT card and driver's license being in good standing and despite absence of any concerns or restrictions from his physician about his ability to drive or operate equipment; (ii) failing to

provide a requested reasonable accommodation to Plaintiff of a warehouse job, (iii) failing to engaged in the interactive process of finding another reasonable accommodation; and (iv) ultimately terminating Plaintiff constituted discrimination against Plaintiff on the basis of his disability and/or record of disability and/or being regarded as having such a disability.

44. Plaintiff's disability and/or record of disability and/or being regarded as having such a disability was a motivating factor in the discriminatory conduct he suffered and experienced, in that it actually played a role in and had a determinative influence in any of Defendant's conduct, as alleged herein.

45. Defendant's actions against Plaintiff have caused him pain, anguish, anxiety and distress, as well as lost income.

46. The actions and conduct of Defendant set forth herein were outrageous and showed an evil motive or reckless indifference or conscious disregard for the rights of Plaintiff, and therefore Plaintiff is entitled to punitive damages to punish Defendant and to deter Defendant and others from like conduct.

WHEREFORE, Plaintiff prays for judgment against Defendant on Count I of his Complaint for Damages, for a finding that he has been subjected to unlawful discrimination prohibited by R.S.Mo. § 213.010 *et seq.*; for an award of compensatory and punitive damages; for an award of back pay; for reinstatement or an award of front pay; for his costs expended, for his reasonable attorneys' fees; and for other and further relief the Court deems just and proper.

### COUNT II
### ADA/ADAAA – Discrimination, in violation of 42 U.S.C. § 12101 *et seq.*

47. Plaintiff hereby incorporates by reference every other allegation of this Complaint as if fully set forth herein.

48. The ADA/ADAAA prohibits discrimination against a person who has, is regarded

7

Case 4:24-cv-00066-FJG    Document 3    Filed 01/30/24    Page 7 of 11

as having, or has a record of a disability, i.e., a physical or mental impairment that substantially limits one or more major life activities.

49. "Major life activities" as defined in the ADA/ADAAA include the operation of a major bodily function, including but not limited to neurological and brain functions.

50. Plaintiff's Huntington's Disease constituted a physical and/or mental impairment that substantially limited his major life activities, in that it affects Plaintiff's brain cells, his balance, ability to walk and affects Plaintiff's ability to take care of himself.

51. Plaintiff's Huntington's Disease did not affect Plaintiff's ability to perform the essential functions of his job, with or without reasonable accommodations.

52. Alternatively, because of Huntington's Disease Plaintiff is being regarded as having such a physical impairment and/or Plaintiff has a record of having such an impairment, which with or without a reasonable accommodation does not interfere with Plaintiff performing the essential functions of his job.

53. Plaintiff requested reasonable accommodations for his disability, and/or the need for reasonable accommodations was obvious to Defendant.

54. Defendant engaged in conduct prohibited by the ADA/ADAAA, including but not limited to: (i) informing Plaintiff that he could no longer perform the functions of a Service Technician/ Driver for Defendant, despite Plaintiff's DOT card and driver's license being in good standing and despite absence of any concerns or restrictions from his physician about his ability to drive or operate equipment; (ii) failing to provide a requested reasonable accommodation to Plaintiff of a warehouse job, (iii) failing to engaged in the interactive process of finding another reasonable accommodation; and (iv) ultimately terminating Plaintiff constituted discrimination against Plaintiff on the basis of his disability and/or record of

disability and/or being regarded as having such a disability.

55. The conduct and actions by the above-described perpetrators, including but not limited to Mr. Henley, were performed on the basis of Plaintiff's disability and constitute discrimination based on disability.

56. Plaintiff suffered tangible adverse employment actions as a result of Defendant's conduct as referenced herein, including but not limited to the termination of his employment.

57. The conduct of Defendant, described herein, would have detrimentally affected a reasonable person in Plaintiff's position.

58. Defendant's unlawful conduct directly and proximately caused and will continue to cause Plaintiff to suffer damages, including but not limited to lost wages and emotional distress.

59. Defendant's treatment of Plaintiff was punitive in nature and was based upon Plaintiff's status as a person who has, is regarded as having, or has a record of a physical and/or mental impairment that substantially limits one or more major life activities.

60. Supervisory and management-level employees knew or should have known of the discrimination, but failed to appropriately address the problem and further failed to implement effective and appropriate procedures to stop discrimination against Plaintiff based on his disability.

61. Defendant's actions were outrageous and showed an evil motive or reckless indifference or conscious disregard for the rights of Plaintiff and others. Therefore, Plaintiff is entitled to punitive damages from Defendant to punish Defendant and to deter Defendant and others from like conduct.

WHEREFORE Plaintiff prays for judgment in his favor and against Defendant on Count

II of his Complaint; for a finding that he has been subjected to unlawful discrimination as prohibited by the ADA/ADAAA; for an award of compensatory and punitive damages; for reinstatement or an award of back and front pay; for pre-judgment and post-judgment interest as provided by law; for his costs expended herein; reasonable attorneys' fees, as contemplated by 42 U.S.C. § 12205; and for such other and further relief as this Court deems just and proper.

## COUNT III
### ADA/ADAAA – Retaliation in violation of 42 U.S.C. § 12203

62. Plaintiff hereby incorporates by reference every other allegation of this Complaint as if fully set forth herein.

63. The ADA/ADAAA prohibits retaliation against an individual who has opposed disability discrimination under the ADA/ADAAA.

64. Plaintiff engaged in the protected activity by requesting reasonable accommodations and/or opposing discrimination based on his disability and/or perceived disability and/or record of disability.

65. Plaintiff's actions in requesting reasonable accommodations for his disability on the basis of his disability and/or record of disability constituted protected activities under the ADA/ADAAA.

66. As a result of Plaintiff's protected activities, Defendant subjected Plaintiff to adverse employment actions as alleged herein, including but not limited to terminating Plaintiff's employment.

67. Defendant's retaliation against Plaintiff was intentional, willful, and malicious, and constituted a willful violation of Plaintiff's federally protected rights.

68. At the time Defendant retaliated against Plaintiff, Defendant knew that such retaliation was unlawful.

69. Defendant's unlawful conduct directly and proximately caused and will continue to cause Plaintiff to suffer damages, including but not limited to lost wages and emotional distress.

70. Defendant's actions were outrageous and showed an evil motive or reckless indifference or conscious disregard for the rights of Plaintiff and others. Therefore, Plaintiff is entitled to punitive damages from Defendant to punish Defendant and to deter Defendant and others from like conduct.

WHEREFORE Plaintiff prays for judgment in his favor and against Defendant on Count III of his Complaint; for a finding that he has been subjected to unlawful retaliation as prohibited by the ADA/ADAAA; for an award of compensatory and punitive damages; for reinstatement or an award of back and front pay; for pre-judgment and post-judgment interest, as provided by law; for his costs expended herein; reasonable attorneys' fees, as contemplated by 42 U.S.C. § 12205; and for such other and further relief as this Court deems just and proper.

Plaintiff requests a jury trial on all claims.

Respectfully submitted,

**HOLMAN SCHIAVONE, LLC**

By: */s/ Aiman Dvorak*
Kirk D. Holman, MO Bar #50715
Aiman Dvorak, MO Bar #69068
4600 Madison Avenue, Suite 810
Kansas City, Missouri 64112
TEL: (816) 283-8738
FAX: (816) 283-8739
kholman@hslawllc.com
advorak@hslawllc.com
ATTORNEYS FOR PLAINTIFF